United States District Court
Southern District of Texas
**ENTERED**
December 13, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEANA AYRES, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. H-24-3734 |
| § | |
| CHEMJET INTERNATIONAL, INC., *et al.*, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

    Deana Ayres worked at Chemjet International Inc. as a shipping clerk. She alleges that she was sexually harassed by a supervisor and other coworkers over the course of her employment. She also alleges that Chemjet mishandled a situation where she reported a coworker for making violent threats. She brings claims under Title VII and the Texas Commission on Human Rights Act ("TCHRA") for sexual harassment, retaliation, and a hostile work environment, and under Texas common law for intentional infliction of emotional distress, negligent supervision and retention, constructive discharge, negligence, and negligent infliction of emotional distress. (Docket Entry No. 1-2 ¶¶ 39-62, ¶¶ 70-97). Chemjet moves to dismiss Ayres's common-law claims for failure to state a claim upon which relief can be granted. (Docket Entry No. 6).

    Based on the pleadings, the motion, and the applicable law, the court grants the motion for partial dismissal of Ayres's common-law claims for intentional infliction of emotional distress, negligent supervision and retention, negligence, and negligent infliction of emotional distress. Ayres's claims for constructive discharge, and her claims under Title VII and the TCHRA remain. The reasons for these rulings are explained below.

I.  **Background**

Ayres began working as a shipping clerk at Chemjet in May 2021.  (Docket Entry No. 1-2 ¶ 11).  She also worked shifts cleaning Chemjet's offices outside of regular business hours.  (*Id.* ¶ 12).  She alleges that during these cleaning shifts, her supervisor, Brandon Cameron, sexually harassed her.  (*Id.*).   She alleges that when she rejected his sexual advances, he retaliated by refusing to permit her to continue cleaning the offices or "get additional hours," and implied that someone else would do the job.  (*Id.* ¶ 13).

Chemjet required Ayres to use her personal phone for work purposes, which she claims led to her receiving sexually harassing messages from male coworkers and company clients.  (*Id.* ¶ 14).  She alleges that some coworkers' wives began to stalk and intimidate her because they were unhappy over explicit messages sent by their husbands.  (*Id.* ¶ 15).  Ayres alleges that when she reported these messages to Chemjet leadership and HR, the only result was retaliation against her for reporting the messages.  (*Id.* ¶ 14).  Ayres alleges that she requested, but did not receive, a work-issued phone.  (*Id.*).

Ayres also alleges that Cameron, her supervisor, would not allow her to take advantage of overtime work opportunities in Chemjet's warehouse.  (*Id.* ¶ 17).  He purportedly justified this by stating that if he permitted her to work overtime in the warehouse, "'the rest of the employees wouldn't get nothing done.'"  (*Id.*).  She alleges that she reported this to Eric Heath, a Director of Quality, Health, Safety, and Environment at Chemjet, who directed Brandon to allow Ayres to work in the warehouse and to provide her additional training and certification opportunities. (*Id.* ¶ 18-19).  Ayres alleges that despite this instruction, she was never allowed to work overtime in the warehouse while all other employees in her position were permitted to do so.  (*Id.* ¶ 19).

Ayres also alleges that Bobby Perry, a colleague with a history of violent criminal acts, told Ayres that he planned to harm one of his family members and to harm Cameron. (*Id*. ¶¶ 20-22). Ayres states that she reported this threat to Robert Duclose, a Chemjet facilities director. Chemjet leadership compelled her to make a formal report of the threats including to the police, despite her desire to not "be involved in it," out of fear for her own safety. (*Id*. ¶¶ 24-25). She alleges that she was harassed by "the whole workforce" for reporting her colleague. (*Id*. ¶ 26). Chemjet leadership told her and her family that they would need to move into a hotel for several days. (*Id*. ¶¶ 27-29). While she was living in the hotel, she alleges that Chemjet leadership told her that she could not make any contact with extended family, friends, or co-workers. (*Id*. ¶ 29). She was also told that she could not return to the office. (*Id*.).

Ayres alleges that Chemjet permitted her to return to the office after the colleague who made the threat was institutionalized in a facility for the mentally ill. (*Id*. ¶ 31). After she returned to work, she claims that Cameron invited her to visit a topless resort in Mexico with him. (*Id*. ¶ 32). She declined, but he sent another invitation via text message, which she once again declined. (*Id*. ¶ 33). She raised the issue of Cameron's harassment again to Heath, but that Heath failed to follow up. (*Id.* ¶ 34). Ayres resigned "as any other reasonable person in her position would in a clear case of constructive termination." (*Id*.).

Ayres timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Texas Workforce Commission. (*Id*. ¶ 35). After a right to sue was issued on the charge, Ayres filed suit on August 15, 2024. (*Id*. ¶ 36; *Id*. at 31; *Id*. at 1).

## II.   The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a),

which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558).

### III. Analysis

#### A. The Common-Law Claims

##### a. Negligence

Chemjet asserts that negligence claims must be dismissed as preempted by the TCHRA. (Docket Entry No. 6 at 5). The Texas Supreme Court has held that "the TCHRA, the Legislature's specific and tailored anti-harassment remedy, is preemptive when the complained-of negligence is entwined with the complained-of harassment." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 (Texas 2010). Two out of Ayres's three negligence claims are rooted in her harassment allegations that Chemjet was negligent by: (1) failing "to adequately address the sexual harassment

4

and hostile work environment created by Brandon Cameron and other coworkers"; and (2) allowing "the distribution of Plaintiff's personal contact information to coworkers and clients, leading to harassment and threats from both coworkers and their spouses." (Docket Entry No. 1-2 ¶ 87). Those two claims are preempted by the TCHRA and dismissed.

Ayres also brings a negligence claim that Chemjet "failed to take appropriate actions after being notified of a credible threat of violence by a coworker … which put [Ayres] and other employees at significant risk." (*Id.*). Ayres alleges that she "felt unsafe and distressed, culminating in her constructive discharge." (*Id.* ¶ 89). Chemjet contends that this claim should also be dismissed because it "is grounded in the same factual allegations as [Ayres's] claims for discrimination, retaliation, and hostile work environment under Title VII" and thus "inextricably linked" to those claims. (Docket Entry No. 6 at 6). "A state law claim is preempted by a federal statute when the 'gravamen of a plaintiff's complaint is of the type of wrong that the statutory remedy was meant to cover.'" (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 808-09 (Tex. 2010)). Title VII is a federal employment law that prohibits employment discrimination on the basis of several protected characteristics. Ayres's claim that Chemjet is negligent for failing to appropriately address the threat posed by Perry is unrelated to her claims of sexual harassment. This negligence claim is not preempted by the TCHRA.

The claim is nonetheless dismissed because Ayres fails to meet all the required elements for negligence. A negligence finding requires a duty, breach, and damages proximately caused by that breach. *Wansey v. Hole*, 379 S.W.3d 246 (Tex. 2012). Ayres's claim clearly fails as to breach. Ayres's complaint alleges that she reported Perry to Chemjet leadership, that she was asked to assist in the investigation, and that Chemjet arranged for her to stay in a hotel as a protective measure. Ayres does not allege that Chemjet told Perry that she reported him. Nor does she allege

5

that Chemjet failed to respond to her report. Chemjet did not breach any duty to Ayres with respect to the allegations surrounding its response to her report regarding Perry.

### b. Intentional Infliction of Emotional Distress

Chemjet asserts that Ayres's claim for intentional infliction of emotional distress must be dismissed because the Texas Supreme Court has held that it is unavailable to employees complaining of sexual harassment by a work supervisor. (Docket Entry No. 6 at 2) (citing *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438 (Texas 2004)). It also asserts that claims for intentional infliction of emotional distress arising out of any kind of "employment dispute," including claims for sex discrimination, hostile work environment, or retaliation, are barred. (*Id*.). Ayres responds that the claim is not barred because the conduct giving rise to her claim was "separate and distinct from mere harassment or discrimination," and was instead, "extreme and outrageous behavior." (Docket Entry No. 10 at 2-3).

The court agrees that the claim for intentional infliction of emotional distress must be dismissed under *Hoffman-La Roche*, which held that "if the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim." *Hoffman-LaRoche*, 144 S.W.3d at 448 (quoting reference omitted)). In addition, Ayres's attempt to circumvent *Hoffman-LaRoche*'s holding fails because the alleged conduct does not rise to the level of extreme and outrageous behavior. *See Swafford v. Bank of Am. Corp.*, 401 F. Supp. 2d 761, 765 (S. D. Tex. 2005) (holding that "allegations and evidence of vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job termination, did not, as a matter of law, rise to the level of extreme or outrageous conduct.") (citing *Hoffman-La Roche,* 144 S.W.3d at 448-49). The claim for intentional infliction of emotional distress is dismissed.

### c. Negligent Infliction of Emotional Distress

Ayres asserts that Chemjet's failure to address sexual harassment by Cameron or to "properly manage the situation involving the threatening behavior of [] Perry," caused her severe emotional distress. (Docket Entry No. 1-2 ¶¶ 90-97). Ayres concedes that she suffered no physical injuries arising from Chemjet's purported negligence. (*Id*.). She nonetheless asserts she has met the requirements to claim negligent infliction of emotional distress because Chemjet breached a legal duty by failing to address Cameron's harassment or protect her from Perry, and her ensuing emotional distress was foreseeable. (*Id*.). Chemjet argues that her claim must be dismissed because Texas does not recognize a cause of action for negligent infliction of emotional distress. (Docket Entry No. 6 at 6). The court agrees. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 612 (Tex. 2002). The claim is dismissed.

### d. The Negligent Supervision and Retention Claims

Chemjet argues that Ayres's claims for negligent supervision and retention must also be dismissed because of preemption by the TCHRA. Alternatively, Chemjet argues that those claims are preempted by Ayres's Title VII claims.

Ayres alleges negligent supervision and retention based on the claim that Chemjet breached a duty to her "by retaining Cameron as a supervisor despite his inappropriate and harassing behavior towards [Ayres]." (Docket Entry No. 1-2 ¶ 73). Ayres argues that Chemjet's continuation of that Cameron's employment "allowed a culture of harassment and intimidation to persist in the workplace." (*Id*. ¶ 75). The assertions that Ayres relies on in her negligent supervision and retention claims are the same assertions that she relies on for her claims under Title VII and the TCHRA. The common-law claims are thus preempted and dismissed. *See, e.g., Moyer v. Jos. A. Bank Clothiers, Inc.*, 2013 WL 4434901, at *7 (N.D. Tex. Aug. 19, 2013)

7

(negligent training, supervision and retention claims based on allegations of sexual harassment were preempted by the plaintiff's Title VII claims); *Waffle House,* 313 S.W.3d at 801–02 (an employee's claims for negligent supervision and retention based on sexual harassment were preempted by employee's claims based on the same conduct under the TCHRA).

Ayres asserts that her negligent supervision and retention claims should not be dismissed because "the TCHRA does not cover Chemjet's failure to respond to threats of violence or its negligent handling of workplace safety, which are separate and actionable torts under Texas common law." (Docket Entry No. 10 at 4). But Ayres's complaint states specifically that she sues because of Cameron's harassment, and she fails to present any argument about these other purported bases for her claim. (Docket Entry No. 1-2 ¶¶ 73-75). The claims for negligent supervision and retention are dismissed.

### e. Constructive Discharge

Chemjet's motion fails to meaningfully challenge or discuss Ayres's common-law constructive discharge claim. The claim remains, along with Ayres's claims under Title VII and the TCHRA.

### IV. Conclusion

Ayres's common law claims for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision and retention are dismissed for failure to state a claim upon which relief can be granted. The claims are dismissed with prejudice, as amendment would be futile. Ayres's claim for constructive discharge and her claims under Title VII and the Texas Commission on Human Rights Act remain.

SIGNED on December 12, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge